Daniel IRELAND, a/k/a Dan Ireland (Plaintiff), Respondent,

v.

MANUFACTURERS & MERCHANTS INDEMNITY COMPANY, a corporation (Defendant), Appellant.

No. 29682.

St. Louis Court of Appeals.

Missouri.

Feb. 5, 1957.

Frank B. Green, Jr., St. Louis, for appellant.

Daniel Heagney of Henderson, Heagney & Snyder, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is a suit to recover on a contract of automobile collision insurance. The insurance company denied liability upon the ground that the policy had been canceled prior to plaintiff's loss. The case was tried to a jury and resulted in a verdict for plaintiff for the amount of his loss, with interest, plus a penalty for vexatious refusal to pay, and attorney's fee. Judg-

ment on the verdict was rendered in plaintiff's favor for the total sum of $1,056.04. This appeal followed.

In April, 1954, plaintiff made application to defendant for a policy of insurance to cover his 1952 Pontiac automobile. This application was accepted, and the policy in suit was issued and delivered to plaintiff. The premium for said policy, which plaintiff paid, was $167.50. The policy was written to cover the period from April 16, 1954, to October 16, 1955. It contained a $50 deductible clause. In addition to collision coverage, a $10 towing provision was incorporated in the policy, and other standard coverages not here involved. Plaintiff's address appears in the policy as 3051 Cass Avenue, St. Louis, Missouri. At the time the policy was issued and at all times thereafter, down to the date of trial, plaintiff had resided at that address.

At the time plaintiff purchased his car he secured a loan from the Granite City Steel Employees Federal Credit Union to cover the purchase price and the cost of the insurance. Mr. Williams was superintendent of the credit union and handled the transaction in question. The policy contained a loss-payable clause in favor of said credit union.

On April 13, 1955, plaintiff, while driving his car, collided with another automobile. After the accident plaintiff called on Mr. Williams and advised him of the collision. Williams advised plaintiff of the towing provision in the policy and arranged to have the car towed to the premises of a Pontiac dealer in Granite City. He also told plaintiff that he would get in touch with the insurance company. He also directed plaintiff to get two estimates of his damage. Plaintiff did this. One estimate, by the Pontiac dealer, ran around $600, and the other came to about $695. Plaintiff gave these estimates to Mr. Williams and the latter sent them on to the insurance company. At the same time, plaintiff signed a claim for his loss and left it with Williams.

About two weeks later Mr. Williams called plaintiff and told him that the insurance company had advised him that the policy had been canceled prior to the loss. Plaintiff testified that he had never received any notice of cancellation or refund of the unearned premium on the policy.

At the trial it was agreed by counsel for the parties that on August 11, 1954, the unearned premium on the policy amounted to $109.02. Plaintiff testified that the value of his car prior to the collision was $1100, and its value after the collision was $400.

The cancellation provision of the policy, so far as material, is as follows:

"* * * This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period * * *.

"* * * If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the named insured."

Patricia A. Geimer, an employee in the St. Louis branch office of the defendant, testified that on August 11, 1954, she received a request from the home office to cancel the policy. She immediately prepared a notice of cancellation. The company's practice was to prepare the notices in triplicate—the original being mailed to the insured, the second copy sent to the home office, and the third copy kept as a

part of the branch office records. It was also the practice to attach to the home office copy a post office receipt showing the mailing of the notice to the insured, together with a computation of the unearned premium. The witness identified defendant's Exhibit 2 as a copy of the notice of cancellation which she prepared on the occasion in question. The material portion of this exhibit, which was introduced in evidence, is as follows:

"Notice of Cancellation

"Automobile Policy No. 13–205448

"In accordance with the terms of the above captioned policy issued by the undersigned company, this is a formal notice of cancellation of said policy to become effective on August 21, 1954, at 12:01 A.M. Such cancellation shall be without prejudice to any claim originating prior thereto. Any return premium due under this policy, if not tendered herewith, will be refunded upon demand.

"Policy Issued To: Dan Ireland, 3051 Cass, St. Louis, Missouri
    "Granite City Steel Employees Fed. Credit Union

        "Manufacturers & Merchants Indemnity Company

        "By: D. F. Reid, Authorized Representative.

"I hereby certify that on August 11, 1954, I delivered to the Receiver of Mail at the U. S. Post Office at St. Louis, Mo., a Notice of Cancellation of which the above is an exact copy and at that time received the Post Office Department receipt (form 3817) attached at right.
"Signed at St. Louis, Mo.
"Date: August 11, 1954
"Signature: Pat Geimer."

The receipt attached was as follows:

"Post Office Department
"Received from: M and M Indemnity Company

"1415 Big Bend, St. Louis, Mo.
"One piece of ordinary mail addressed to Dan Ireland, 3051 Cass, St. Louis, Missouri.

           "Postmaster."

Attached to the upper righthand corner of said receipt was a canceled three cent postage stamp. The stamp was canceled with a round ink stamp showing the date of August 11, 1954.

The witness testified that the procedure she followed was to attach the Post Office receipt to the home office copy as soon as she brought it back from the Post Office. She stated that it was the practice to give the letter containing the notice to the postal clerk after he gave a receipt for it, and that the clerk then would put it in a mail sack. The clerk would never read the notice.

Miss Geimer testified that she also prepared and mailed a similar notice to the Granite City Steel Employees Federal Credit Union. A copy of this notice with a post office receipt attached was introduced in evidence as defendant's Exhibit 3.

Herbert A. Riff, Superintendent of the Richmond Heights Post Office, was shown defendant's Exhibits 2 and 3 and stated that the round ink stamp appearing on each exhibit signified a mailing at the Richmond Heights Post Office received from the M. & M. Indemnity Company, 1415 Big Bend, St. Louis, Missouri. One mailing was addressed to Granite City Steel Employees Federal Credit Union, 20th and Madison, Granite City, Illinois, and the other was addressed to Dan Ireland, 3051 Cass Avenue, St. Louis, Missouri. He stated that the names and addresses on a receipt are taken from the letter as it is presented by the mailer to the clerk. The clerk then takes the letter and deposits same in a mail sack.

Appellant's first point is that the court erred in refusing to sustain its motion

for a directed verdict at the close of the whole case. It contends that it offered evidence which established as a matter of law that the policy was canceled approximately eight months prior to the date of the collision. The evidence relied upon consists of the oral testimony of Miss Geimer and that given by Herbert A. Riff, together with the certificate of mailing issued by the post office and the copy of the notice of cancellation, with said certificate attached, which were a part of the records of the defendant company.

This contention of appellant is so clearly untenable that we will not dwell upon it at length. The burden was upon the defendant to prove cancellation. It sought to prove this by the oral testimony and documentary evidence above mentioned. It has been many times held in this state that the jury is privileged to believe or reject, in whole or in part, the testimony of any witness, even though uncontradicted. Thomson v. Butler, 347 Mo. 269, 147 S.W. 2d 437; Woehler v. City of St. Louis, 342 Mo. 237, 114 S.W.2d 985; Shaw v. Fulkerson, 339 Mo. 310, 96 S.W.2d 495. It must also be borne in mind that for documentary evidence to be conclusive it must be an instrument or record having legal efficacy to which the one sought to be bound is in some way a party, or the truth of which he vouches for, either expressly or in legal effect, or is estopped to deny. Blue v. Supreme Camp of American Woodmen, Mo.App., 135 S.W.2d 373; Johnson v. Missouri Ins. Co., Mo.App., 46 S.W.2d 959; Shaw v. American Ins. Union, Mo.App., 33 S.W.2d 1052; Wilson v. Kansas City Life Ins. Co., 233 Mo.App. 1006, 128 S.W. 2d 319.

The documentary evidence in this case was not of such a character as to render it conclusive under the above mentioned rule. Furthermore, the testimony that plaintiff did not receive the notice was some evidence that it was not mailed. Gilbert v. Malan, 231 Mo.App. 469, 100 S.W.

2d 606; Hawes v. American Central Ins. Co. of St. Louis, 222 Mo.App. 1057, 7 S.W. 2d 479. The court did not err in overruling defendant's motion for a directed verdict.

Complaint is made with respect to Instruction No. 1, given by the court at plaintiff's request. It was plaintiff's main instruction and hypothesized the facts necessary to be found to authorize a verdict for plaintiff. By paragraph "G" of said instruction the jury were required to find: "that at no time prior to said collision had defendant canceled said policy in accordance with the cancellation provision contained therein, by mailing to plaintiff notice of cancellation and, as soon as practicable thereafter, tendering to plaintiff the amount of the unearned premium on said policy." The specific objection directed to this part of the instruction is that it makes a return of the unearned premium a condition precedent to cancellation, contrary to the plain terms of the policy.

Whether or not a return of the unearned premium is to be regarded as a condition precedent to a valid cancellation depends upon the terms of the contract. In the instrument sued on it is provided that the policy may be canceled by mailing the insured a written notice stating when such cancellation shall be effective. It is further stipulated that the date of cancellation stated in the notice "shall become the end of the policy period." There is no provision making a tender or return of the unearned premium a condition precedent to a valid cancellation. On the contrary, it is provided that the company may make premium adjustments at the time of cancellation or "as soon as practicable after cancellation becomes effective." In our judgment, the return of the unearned premium is not, under this contract, a condition precedent to the company's right to cancel. Under the terms of the policy the unearned premium is to be returned as a consequence of cancella-

tion and not as a condition precedent to such cancellation. Therefore, Instruction No. 1 was erroneous and should not have been given. Summers v. Travelers Ins. Co., 8 Cir., 109 F.2d 845, 127 A.L.R. 1336; Wallace v. State Farm Mutual Automobile Ins. Co., 187 Tenn. 692, 216 S.W.2d 697; Aetna Ins. Co. v. Aviritt, Tex.Civ.App., 199 S.W.2d 662; American Fire & Cas. Co. v. Combs, Ky., 273 S.W.2d 37.

■ This brings us to a consideration of another point raised which may again be present upon a retrial, namely, the complaint that the court erred in submitting the issue of vexatious refusal to pay. The statute, Section 375.420 RSMo 1949, V.A.M.S., which authorizes damages and an attorney's fee upon a finding that the company's refusal to pay was vexatious, is highly penal and is strictly construed. Aufrichtig v. Columbia Nat. Life Ins. Co., 298 Mo. 1, 249 S.W. 912; Non-Royalty Shoe Co. v. Phoenix Assur. Co., Ltd., of London, England, 277 Mo. 399, 210 S.W. 37. The penalty should not be inflicted unless the evidence shows that such refusal was wilful and without reasonable cause as the facts appear to a reasonable and prudent man before trial. Merely because the verdict after trial is adverse to defendant's contention is no reason for inflicting the penalty. Non-Royalty Shoe Co. v. Phoenix Assur. Co., Ltd., of London, England, 277 Mo. 399, 210 S.W. 37; Patterson v American Ins. Co. of Newark, N. J., 174 Mo.App. 37, 160 S.W. 59. An insurance company has a right to entertain an honest difference of opinion as to its liability and, so long as it acts in good faith in contesting either an issue of fact or law, it will not subject itself to the penalty of the statute. As stated by Blair, J., in State ex rel. Continental Life Ins. Co. of Kansas City v. Allen, 303 Mo. 608, 262 S.W. 43, loc. cit. 46: "It is only when it persists in its refusal to pay the policy after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay."

■ The defendant here introduced evidence at the trial from which the jury could reasonably have found that there was a valid cancellation of the policy prior to plaintiff's loss. This evidence, while not conclusive, did possess a high degree of pursuasive force, enough so that we are convinced that the defense was not made in bad faith.

We hold that plaintiff failed to produce any substantial facts upon which to base a finding of vexatious refusal to pay, and if upon a new trial no such showing be offered, this issue should not be submitted to the jury.

For the error noted in the giving of Instruction No. 1, the judgment is reversed and the cause remanded for new trial.

MATTHES, J., and JAMES D. CLEMENS, Special Judge, concur.